Filed 3/19/21  P. v. Casey CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JURRAY WILLIE CASEY,<br><br>    Defendant and Appellant. | B303148<br><br>(Los Angeles County<br>Super. Ct. No. SA058967) |

APPEAL from an order of the Superior Court of Los Angeles County.  Lauren Weis Birnstein, Judge.  Affirmed.

Aaron Spolin, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Senior Assistant Attorney General, Michael Pulos, Lynne G. McGinnis, and Joy Utomi, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Jurray Casey appeals the denial of a petition for resentencing under Penal Code[1] section 1170.95 following an evidentiary hearing on an order to show cause. Because substantial evidence supports the trial court's finding that appellant was a direct aider and abettor who acted with malice, he is ineligible for section 1170.95 relief and we affirm.

### FACTS AND PROCEDURAL BACKGROUND

I. **Facts[2]**

A. ***The underlying crime***

On the night of January 7, 2006, Jamarea Wilson (Wilson), Rashad Ali (Ali), Leon Collins (Collins), Tariq Anderson (Anderson), and Rammon Lewis attended a dance competition at the Debbie Allen Dance Studio in Culver City. During the event, there was an altercation and shots were fired. After police told everyone to leave, Wilson and his friends drove away in Wilson's customized Dodge Durango. (*Casey I*, *supra*, B201371.)

Ali, Collins, and Anderson sat in the backseat of the Durango. As they drove along, Anderson noticed appellant driving toward them in a Thunderbird from the opposite direction. Anderson saw appellant give the Durango a hard stare before making a U-turn to drive behind them. Both vehicles came to a stop at a red light. The Durango was in the No. 1 lane, another car was in the No. 2 lane, and the Thunderbird was in

---

[1] Undesignated statutory references are to the Penal Code.

[2] We draw these facts from our prior, unpublished appellate opinion affirming defendant's conviction on appeal. (*People v. Casey* (Dec. 10, 2008, B201371) [nonpub. opn.] (*Casey I*).)

the "gutter lane." Anderson told Wilson to take off as soon as the light turned green. (*Casey I*, *supra*, B201371.)

When the light changed, Wilson accelerated. Appellant also accelerated, passing and pulling in front of the car in the middle lane before drawing alongside the Durango. No words or gestures were exchanged between the occupants of the two cars. Someone in the Thunderbird then put his arm out the driver's window and fired several shots into the Durango. Wilson immediately made a U-turn and drove in the opposite direction until he saw a police officer. The Thunderbird drove away. (*Casey I*, *supra*, B201371.)

Ali suffered a gunshot wound to the abdomen and later died in surgery. (*Casey I*, *supra*, B201371.)

**B. *Conviction, appeal, and subsequent proceedings***

Appellant and a passenger in the Thunderbird[3] were charged with murder (§ 187, subd. (a)) and shooting at an occupied motor vehicle (§ 246). The information further alleged a gang enhancement (§ 186.22, subd. (b)(1)(C) & (b)(4)), and contained an allegation that a principal personally and intentionally discharged a firearm (§ 12022.53, subds. (b), (c), (d), & (e)(1)).

At trial, Collins identified appellant as both the driver of the Thunderbird and the shooter. He testified that he saw appellant holding the gun as he put his arm halfway out the window. He described appellant's arm as "built" "like a football player." Anderson also identified appellant at the field showup.

---

[3] There were three passengers in the Thunderbird in addition to appellant, who was driving. (*Casey I*, *supra*, B201371.)

3

(*Casey I*, *supra*, B201371.)  The prosecution presented evidence at trial that appellant was a member of the Baby Insane Crips gang and played football for his high school.  (*Casey I*, *supra*, B201371.)

For the defense, the head coach of appellant's high school football team (who was also a probation officer) testified that appellant was one of the best players on his team, and he had no reason to believe appellant was a gang member.  A private investigator examined the Durango and the Thunderbird for the defense.  Using dowels to determine the trajectory of the bullets that hit the Durango, he opined that a person sitting behind the driver's seat of the Thunderbird could have been the shooter. (*Casey I*, *supra*, B201371.)

The jury found appellant guilty of first degree murder and shooting at an occupied vehicle.  The jury also found true the personal and intentional use of a firearm by a principal allegation, but rejected the gang enhancement allegations.  The court sentenced appellant to a term of 50 years to life in prison. (*Casey I*, *supra*, B201371.)

On direct appeal, this court affirmed the judgment of conviction but modified the judgment to strike the sentence enhancements under section 12022.53, subdivisions (d) and (e)(1). (*Casey I*, *supra*, B201371.)  In a subsequent habeas proceeding, appellant's first degree murder conviction was reduced to second degree murder pursuant to *People v. Chiu* (2014) 59 Cal.4th 155.

## II. Procedural Background

On February 5, 2019, appellant filed a petition for resentencing under section 1170.95, alleging he was convicted of second degree murder under the natural and probable consequences doctrine, but could not be convicted of murder

4

following the amendments to sections 188 and 189, effective January 1, 2019.  Acknowledging it had offered three theories of murder liability at trial, including aiding and abetting under the natural and probable consequences doctrine, the prosecution opposed the section 1170.95 petition on the ground that the evidence established appellant was the actual killer or was a direct aider and abettor who acted with malice.

Following the hearing on the order to show cause, the superior court denied the petition, finding beyond a reasonable doubt that appellant acted with implied malice as a direct aider and abettor of the shooting.  The court emphasized that in convicting appellant of shooting into an occupied vehicle in violation of section 246, the jury necessarily found beyond a reasonable doubt that appellant intended to shoot into the other car or specifically intended to aid and abet someone else in his car to carry out the shooting.

## DISCUSSION

In *People v. Chiu, supra*, 59 Cal.4th at page 166 (*Chiu*), our Supreme Court held that "natural and probable consequences liability cannot extend to first degree premeditated murder because punishing someone for first degree premeditated murder when that person did not actually perpetrate or intend the killing is inconsistent with 'reasonable concepts of culpability.' " (*People v. Gentile* (2020) 10 Cal.5th 830, 838 (*Gentile*).)  In 2018, the Legislature enacted Senate Bill No. 1437 (2017–2018 Reg. Sess., eff. Jan. 1, 2019) (Senate Bill 1437) in order to "more equitably sentence offenders in accordance with their involvement in homicides." (Stats. 2018, ch. 1015, § l, subd. (b); *Gentile*, at p. 839.)  "Among other things, Senate Bill 1437 amended Penal Code section 188 to provide that '[e]xcept as stated in

subdivision (e) of Section 189 [governing felony murder], in order to be convicted of murder, a principal in a crime shall act with malice aforethought.  Malice shall not be imputed to a person based solely on his or her participation in a crime.' " (*Gentile*, at p. 839, quoting § 188, subd. (a)(3).)  The California Supreme Court held in *Gentile* that Senate Bill 1437 "eliminate[d] natural and probable consequences liability for murder regardless of degree." (*Id*. at pp. 847–848; see *id*. at pp. 839, 846, 851 [interpreting amendment to § 188 as barring second degree murder conviction under natural and probable consequences doctrine]; *People v. Offley* (2020) 48 Cal.App.5th 588, 595 (*Offley*).)

The amendment to section 188 did not, however, alter the law regarding the criminal culpability of a direct aider and abettor to murder because such an "accomplice aids the commission of that offense with 'knowledge of the direct perpetrator's unlawful intent and [with] an intent to assist in achieving those unlawful ends.' " (*Gentile*, *supra*, 10 Cal.5th at p. 843; *People v. McCoy* (2001) 25 Cal.4th 1111, 1118 [a direct aider and abettor necessarily "know[s] and share[s] the murderous intent of the actual perpetrator"]; see *Chiu, supra*, 59 Cal.4th at p. 167 [a direct aider and abettor "acts with the mens rea required for first degree murder"].)  "One who directly aids and abets another who commits murder is thus liable for murder under the new law just as he or she was liable under the old law." (*Offley*, *supra*, 48 Cal.App.5th at p. 596.)

Senate Bill 1437 also added section 1170.95, which established a procedure whereby defendants previously convicted of murder under the old law may seek resentencing in the trial court if they could no longer be convicted of murder in light of

6

Senate Bill 1437's statutory changes. (*Gentile*, *supra*, 10 Cal.5th at p. 847; *People v. Martinez* (2019) 31 Cal.App.5th 719, 722–723 (*Martinez*).) In order to obtain relief under section 1170.95, a person convicted of felony murder or murder under a natural and probable consequences theory must first file a petition affirming eligibility for resentencing under the new law. (§ 1170.95, subd. (b)(1).) If the trial court determines the petitioner has made the requisite prima facie showing that he or she falls within the provisions of the statute, the "court 'shall issue an order to show cause,'" and must then hold an evidentiary hearing. (*Martinez*, at p. 723; § 1170.95, subds. (c) & (d).) At that hearing, the petitioner and the prosecution may rely on the record of conviction or offer new or additional evidence to demonstrate the petitioner's eligibility or ineligibility for resentencing. (§ 1170.95, subd. (d)(3).) It is the prosecution's burden to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing. (*Ibid.*; *People v. Drayton* (2020) 47 Cal.App.5th 965, 981 [following issuance of order to show cause, the burden of proof shifts to prosecution to prove, beyond a reasonable doubt, that petitioner is ineligible for resentencing].) "If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges" in accordance with section 1170.95, subdivision (e). (§ 1170.95, subd. (d)(3); *Martinez*, at pp. 723–724.)

On appeal from a denial of relief following an evidentiary hearing under section 1170.95, subdivision (d), we review the trial court's factual findings for substantial evidence. (*People v. Clements* (2021) 60 Cal.App.5th 597, 618 (*Clements*); *People v. Johnson* (2016) 1 Cal.App.5th 953, 960.) Under that familiar

standard, " 'we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt' " under section 188 as amended. (*People v. Morales* (2020) 10 Cal.5th 76, 88; *Clements*, at p. 618.) To that end, we presume the existence of every fact the court as fact finder could reasonably deduce from the evidence in support of the court's order. (*People v. Beck and Cruz* (2019) 8 Cal.5th 548, 626.)

In conducting the evidentiary hearing on a section 1170.95 petition, the trial court does not hold a new trial on all the elements of murder. Rather, the court determines whether the evidence establishes beyond a reasonable doubt that the petitioner acted with malice aforethought, and thus remains guilty of murder under the amendments to section 188. (*Clements*, *supra*, 60 Cal.App.5th at p. 618.) "Our job on review is different from the trial judge's job in deciding the petition. While the trial judge must review all the relevant evidence, evaluate and resolve contradictions, and make determinations as to credibility, all under the reasonable doubt standard, our job is to determine whether there is any substantial evidence, contradicted or uncontradicted, to support a rational fact finder's findings beyond a reasonable doubt." (*Clements*, at p. 618; *People v. San Nicolas* (2004) 34 Cal.4th 614, 657–658.)

"Second degree murder is the unlawful killing of a human being with malice aforethought but without the additional elements, such as willfulness, premeditation, and deliberation, that would support a conviction of first degree murder." (*People v. Knoller* (2007) 41 Cal.4th 139, 151; *People v. Chun* (2009) 45

8

Cal.4th 1172, 1181.) Malice may be express or implied. (§ 188, subd. (a).) Malice is express if the defendant intended to kill. (§ 188, subd. (a)(1); *People v. Gonzalez* (2012) 54 Cal.4th 643, 653.) Implied malice requires no intent to kill, but "only an 'intent to do an act dangerous to human life with conscious disregard of its danger.'" (*People v. Landry* (2016) 2 Cal.5th 52, 96; *Offley*, *supra*, 48 Cal.App.5th at p. 598.) "Thus, implied malice includes an objective component—an act that is dangerous to life—and a subjective component—the defendant's awareness of and disregard for the danger." (*Clements*, *supra*, 60 Cal.App.5th at p. 619; *Knoller*, at pp. 153–154, 157.)

Here, the trial court found beyond a reasonable doubt that the evidence supported appellant's second degree murder conviction under the theory that appellant was a direct aider and abettor who acted with express or implied malice. We conclude substantial evidence supports the trial court's finding. Even if it could not be determined if appellant was the actual shooter, the record in this case establishes that as the driver in the drive-by shooting, appellant aided and abetted the killing with the intent to kill or with knowledge of the danger to and a conscious disregard for human life.

As the trial court recognized, appellant was convicted of the separate offense of shooting at an occupied vehicle, which is defined as the malicious and willful discharge of a firearm at an occupied motor vehicle. (§ 246; *People v. Rivera* (2019) 7 Cal.5th 306, 333.) Appellant's conviction for this offense thus establishes that the jury found beyond a reasonable doubt that appellant was the actual shooter who maliciously and willfully fired at Wilson's vehicle, *or* he was a direct aider and abettor of the crime who knew of the shooter's unlawful purpose and intended to commit

9

or facilitate the shooting at the occupied vehicle. (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1054 [" 'A "person aids and abets the commission of a crime when he or she, acting with (1) knowledge of the unlawful purpose of the perpetrator; and (2) the intent or purpose of committing, encouraging, or facilitating the commission of the offense, (3) by act or advice aids, promotes, encourages or instigates, the commission of the crime" ' "].) Either way, appellant's conviction on this count constitutes substantial evidence in support of the trial court's malice finding and makes him ineligible for relief under section 1170.95.

Further, the evidence of appellant's conduct as the driver constituted substantial evidence to support the court's finding, beyond a reasonable doubt, that appellant acted with implied malice. Appellant's "hard stare" at the Durango's occupants, the sudden U-turn and active pursuit of Wilson's vehicle, and appellant's maneuver to position the Thunderbird to enable the shooter to fire into the occupied vehicle at close range supplied the objective component of implied malice—an act that is dangerous to life—as well as the subjective component—the awareness of and disregard for that danger. (See *Clements*, *supra*, 60 Cal.App.5th at p. 619; *Knoller*, *supra*, 41 Cal.4th at pp. 153–154, 157.)

Based on the foregoing, we conclude substantial evidence supports the trial court's finding that, at a minimum, appellant directly aided and abetted the killing with a conscious disregard for human life. Accordingly, the court properly denied the petition for relief under section 1170.95.

## DISPOSITION

The order denying the petition for resentencing under Penal Code section 1170.95 is affirmed.

NOT TO BE PUBLISHED.


LUI, P. J.

We concur:



ASHMANN-GERST, J.



CHAVEZ, J.

11